United States District Court
Southern District of Texas
**ENTERED**
June 19, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAROOQ AHMED, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-4889 |
| | § | |
| RANDY TATE, WARDEN, *et al.*, | § | |
|     Respondents. | § | |

**ORDER**

Farooq Ahmed (hereinafter "Ahmed" or "Petitioner"), a citizen of Pakistan, filed this habeas corpus action seeking release from immigration detention custody where he was being held pending his removal to Pakistan. (Doc. Nos. 1, 2). Respondents Patrick Contreras, the Field Director of ICE/DHS, and Randy Tate, the warden of the facility in which Ahmed was detained, (collectively, the "Government"), responded to this action with a Motion to Dismiss (Doc. No. 9), to which Ahmed filed a response (Doc. No. 17). Subsequently, the Government filed an Amended Motion to Dismiss (Doc. No. 18), Ahmed responded (Doc. No. 20), and the Government replied (Doc. No. 21). Also pending before the Court are a Motion to Show Cause (Doc. No. 12) and a Motion for Oral Argument (Doc. No. 16).

**I.      Standard of Review**

A defendant may file a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* The court may also consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014) (Lynn, J.).

II. **Jurisdiction**

Section 106 of the REAL ID Act divests courts with jurisdiction over petitions which attack removals. 8 U.S.C. § 1252 (2005), *et seq.* The Supreme Court in *Zadvydas v. Davis*, which was decided prior to the enactment of the REAL ID Act, found federal courts have habeas jurisdiction because a complaint about prolonged detention is not a situation in which a court is called upon to second guess a discretionary removal call made by the Executive Branch. *See* 533 U.S. 678 (2001). Instead, the Supreme Court found that in the case of post-removal detention, requests for relief via

habeas corpus remain available. *Id.* at 688. The REAL ID Act does not change this aspect of a court's jurisdiction. Otherwise, an individual could be placed in an immigration facility pending removal with no end of detention in sight and no avenue of relief. Such a result would be contrary to both the spirit and the letter of the Constitution and laws of the United States. The Court, therefore, finds it has jurisdiction to hear this matter.

### III. Background

The pertinent facts in this matter are relatively simple and even those facts that are somewhat controverted are not dispositive of any motion before the Court. Ahmed is a citizen of Pakistan who entered the United States in 1991. He was detained by ICE in June of 2003 and placed into removal proceedings. In March of 2007 he was ordered removed. He appealed this order, but the Bureau of Immigration Appeals (BIA) dismissed the appeal. Petitioner's motion to reopen was denied in 2009, and later that year that decision was upheld by the Fifth Circuit. *Ahmed v. Holder*, 355 F. App'x 832 (5th Cir. 2009).

At some point during these proceedings, Ahmed was released by ICE and placed under an order of supervision because Pakistan would not issue a travel document for him. This release did not change the fact that he had been ordered removed. Finally, in September of 2019, a travel document to Pakistan was received. At this point, Ahmed's supervision was revoked and he was returned to ICE custody awaiting a January 12, 2020 removal date. On November 7, 2019, Ahmed filed another Motion to Reopen—with a stay of removal. A few days later the BIA granted a stay of the January 12, 2020 removal date.

Shortly after the stay was granted in November, Ahmed filed this habeas corpus action. In the petition he challenged his pre-removal detention. His motion is based upon the Supreme Court's decision in *Zadvydas v. Davis*. In that case, the Supreme Court held that prolonged, and

3

perhaps indefinite, detention pending deportation violates an alien's constitutional rights. *Zadvydas*, 533 U.S. at 696–701. The Supreme Court wrote:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. See Juris. Statement in *United States v. Witkovich*, O.T.1956, No. 295, pp. 8–9. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

Of particular interest to this case was *Zadvydas*'s establishment of certain guidelines to govern this situation. The Supreme Court held that in most circumstances after a detention of six months the detention will be presumed unreasonable and the Government must rebut that presumption with evidence of likelihood of removal. *Id.* Ahmed claims he has been held since May 13, 2019. The Government claims he has only been in custody since September 29, 2019.

Obviously, if the Government's date is correct, Ahmed's December 2019 petition in this court was at least three months premature. If the May 2019 date is correct, all other things being equal, it was ripe when he filed it. Regardless of whom is correct, to quote Ahmed, the point of his petition is to "immediately release petitioner from custody under reasonable conditions of supervision." (Doc. No. 1 at 8).

As this Court considered the merits of the applicable motion and responses, the circumstances changed. On April 9, 2020, Ahmed was released from custody. He remains under an order of supervision with an ankle monitor pending removal. In light of this development, the

4

Government filed an Amended Motion to Dismiss, claiming the entire matter is moot. The Government argues that Ahmed has received the relief—release under supervision—he wanted. Ahmed now complains that the ankle monitor deprives him of liberty. He describes ICE supervision alternatives as follows:

> [ICE] alternatives to detention (ATD) includes these three types of programs: (1) Intensive Supervision Appearance Program (ISAP) [private contractors monitoring respondents through telephonic reporting, radio frequency, GPS (ankle bracelets) and unannounced home visits]; (2) Enhanced Supervision/Reporting (ESR) [private company using same methods as ISAP]; and (3) Electronic Monitoring [operated by ICE with same methods]. Aliens in ATD are also required to report to ICE periodically.

(Doc. No. 20 at 2) (internal footnotes omitted).

## IV. Discussion

Ahmed has been released pursuant to the Intensive Supervision Appearance Program (ISAP).[1] Before the Court addresses the actual merits of the Amended Motion to Dismiss, it is

---

[1] Currently, ICE manages three ATD (Alternatives to Detention) supervision/monitoring programs:

- The first ATD program is the **Intensive Supervision Appearance Program, or ISAP,** which began in 2004. ISAP contractors monitor participating aliens using the following methods: telephonic reporting (TR), radio frequency (RF), global positioning system (GPS), and unannounced home visits. ISAP can accommodate 6,000 aliens daily. ISAP has served approximately 13,000 participants. Approximately 13% of ISAP's participating aliens failed to complete the program, including 9.5% who absconded.
- The second program, **Enhanced Supervision/Reporting (ESR)**, started in December 2007. ESR is also a contractor-operated program that uses the same monitoring methods as ISAP: TR, RF, GPS, and unannounced home visits. ESR can accommodate 7,000 aliens per day, and has served more than 14,000 since it was started. Approximately 4% of ESR's participating aliens failed to complete the program, including 1.5% who absconded.
- The third ATD program, **Electronic Monitoring (EM)**, is operated by ICE, and also began in December 2007. EM is available to aliens residing in locations not covered by the ISAP or ESR contracts. EM monitors aliens using TR, RF, and GPS technologies. Currently, there are approximately 5,000 individuals participating; and approximately 12,000 aliens have participated since the EM program started. Approximately 7% of EM's participating aliens failed to complete the program, including 5% who absconded.
- On average, aliens remain in one of the three programs for about 10 months.

See ICE, Alternatives to Detention for ICE Detainees (Oct. 23, 2009), *published on* AILA InfoNet at Doc. No. 09110666 (emphasis in original); *see also* U.S. Immigration and Customs Enforcement's Alternatives to Detention (Revised), Dep't of Homeland Sec. Office of Inspector Gen. (Feb. 4, 2015), https://oig.dhs.gov/assets/Mgmt/2015/OIG_15-22_Feb15.pdf at 9-10.

5

necessary to make three relevant observations. The first two are factual. First, Ahmed claims he has been in detention since May 2019, while the Government claims his ICE detention began in September 2019. This Court need not resolve this dispute because, in ruling upon a motion to dismiss, the trial court must accept plaintiff's well-pleaded factual allegations as true. (Moreover, in the current posture of this case, the detention date, while it perhaps triggered a *Zadvydas* review, is not dispositive of the issue). The Court therefore relies on the earlier date. Second, it has not been pleaded in the petition that Ahmed has been released pursuant to ISAP, which would include electronic monitoring, but all parties agree that to be the case and therefore the Court will accept that fact as established.

The third observation that must be made is that Ahmed, unlike Zadvydas, had a firm removal date in January of this year and would have already been removed but for his own actions. *See Zadvydas*, 533 U.S. at 684–85. Consequently, if the Court believes the Government's date of detention, his claim would not have been ripe under *Zadvydas*'s six-month guideline by the time he would have been removed. If the Court believes Ahmed's claim that he was detained in May of 2019, which it must, his *Zadvydas* claim would have been ripe when he filed it in December of 2019, but the Government could easily have rebutted that claim by showing that he was being removed the very next month.

Ahmed's continued *Zadvydas* complaint is based upon the contention that the fact he is being monitored by a GPS ankle bracelet means he is, in effect, still in custody. Assuming that monitoring equates to detention, he contends under either start date (May or September of 2019) he has now been in detention for over a year or, at the very least, seven to eight months, either of which exceed the six-month guideline set out in *Zadvydas*. *Id.* at 701.

6

This Court finds this contention to be meritless and hereby grants the Amended Motion to Dismiss for a number of reasons. First, had Ahmed not filed a Motion to Reconsider and Stay with the BIA, he would have been deported some five months ago. Thus, even assuming GPS monitoring equates to detention, it is not the action of the Government that has kept him in "detention;" it is his own appeal. This would be true even if he had not been released in April of 2020. The Supreme Court in *Zadvydas* did not issue a blanket rule that any detention over six months was unconstitutional and that a court was therefore compelled to release the alien. It clearly stated after six months in custody and once the alien provides the court with evidence of "good reason to believe that there is no significant likelihood of removal in the foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Here, there was every reason to believe that Ahmed would be removed (and no good faith reason to believe the opposite). His travel papers had been acquired in September of 2019, and his removal date was set for January 12, 2020. It was only because he filed his Motion to Reconsider with a request to stay that removal that he is still in "detention" in the United States. Thus, even if he were physically in an ICE facility, as opposed to being released pursuant to certain conditions, he would still not necessarily fall under the purview of *Zadvydas* as it is his own actions that would have triggered the extension of the detention.

Setting that undisputed fact aside, this Court finds that ICE's use of ISAP, which includes GPS ankle monitoring, is not an abuse of discretion. The Supreme Court in *Zadvydas* specifically reaffirmed the right of Congress and the Executive Branch to place aliens who are subject to removal under supervision with restrictive conditions. It reviewed the history of cases in this area and concluded:

> [W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision when released from detention, or to incarcerate them where appropriate

7

> for violations of those conditions. *See* 8 U.S.C. § 1231(a)(3) (1994 ed., Supp. V) (*granting authority to Attorney General to prescribe regulations governing supervision of aliens not removed within 90 days*) . . . .

*Id.* at 695 (emphasis added).

ISAP, about which Ahmed complains, was developed pursuant to this delegation of authority, which the Supreme Court has already recognized as being within constitutional bounds. Without question, ICE has the authority to place aliens, such as Ahmed, on supervision and to seek criminal penalties for the failure to comply with these restrictions. 8 U.S.C. §§ 1253(a)(3), 1253(b).

Courts faced with these cases have uniformly found the Government's actions to be reasonable and rationally based. "The liberty interest at issue in ISAP is not fundamental as applied to final-order aliens [such as Ahmed]." *Nguyen v. B.I. Inc.*, 435 F. Supp. 2d 1109, 1114-15 (D. Or. 2006) (citing authority). Therefore, the question that governs this case is whether the government's actions are *rationally related* to a legitimate government intent. *Lawrence v. Texas*, 539 U.S. 558 (2003). Preventing and/or reducing absconding aliens and aliens with criminal records or propensities are two legitimate government interests. These interests are furthered by ISAP.[2] As quoted above, the Supreme Court has already recognized the legitimacy of such action. This Court finds that the placement of Ahmed in ISAP does not violate either his procedural or substantive due process rights. This ruling is consistent with virtually every decision cited to this Court that dealt with someone who was subject to a final order of removal. *See Alvarez v. Holder*, 454 F. App'x 769 (11th Cir. 2011), *Nguyen, supra*; *Iruene v. Weber*, No. 3:12-CV-1864-O-BH, 2012 WL 5945079 (N.D. Tex. Aug. 1, 2012); *López López v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (GPS tracking device placed on an alien who has been ordered removed does not state a claim for a violation of due process); *Zavala v. Prendes*, No. 3-

---

[2] While Ahmed does have three minor brushes with the law, this Court would not describe him (based upon the paucity of the record) as having criminal propensities.

10-CV-1601-K-BD, 2010 WL 4454055 (N.D. Tex. Oct. 5, 2010); *Diawara v. Sec'y of DHS*, No. AW-09-2512, 2010 WL 4225562, at *2 (D. Md. Oct. 25, 2010) (ISAP requirements including ankle bracelet do not violate alien's liberty interests).

## V.     Conclusion

This Court holds that: 1) Ahmed's claim under *Zadvydas* is moot as he has been released from custody; and 2) Ahmed's claim under *Zadvydas* is waived as any delay in his removal (and thus remaining in detention) was caused by his actions in seeking legal relief—not by delays caused by the Government. Alternatively, this Court finds that: 1) the conditions of Ahmed's release under ISAP do not equate to detention as that term was used by the Supreme Court in *Zadvydas*—therefore he has no claim of continued detention based upon the conditions of his ISAP supervision; and 2) the liberty interests of an alien who has been ordered removed are not fundamental and the conditions of Ahmed's ISAP supervision are reasonable and are rationally related to a legitimate government purpose.

The Amended Motion to Dismiss (Doc. No. 18) is granted and this case is dismissed with prejudice. The initial Motion to Dismiss (Doc. No. 9) is denied as moot, as are the Petitioner's Motion for Order to Show Cause (Doc. No. 12) and Motion for Oral Argument (Doc. No. 16).[3]

SIGNED at Houston, Texas this 19th day of June, 2020.

Andrew S. Hanen
United States District Judge

---

[3] While it may be small consolation to Petitioner's Counsel considering this Court's ruling, the Court notes that Ahmed has been represented by attorneys Pegah Rahgozar and Geoffrey Hoffman on a pro bono basis. The Court feels compelled to recognize not only their contribution to the administration of justice, but also their adherence to the high standards of our legal profession in providing legal services to an individual who otherwise might have had to proceed *pro se*. *See* Texas Disciplinary Rules of Professional Conduct – Preamble, pp. 5-6.

9